SLACK *vs.* ORILLION.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE
PARISH OF IBERVILLE, THE JUDGE THEREOF PRESIDING.

The confirmation, by a special act of congress, of a particular tract of land,
surveyed, and its boundaries defined, is equivalent to a patent; but when
the boundaries of the confirmed claim are vague and uncertain, and not
surveyed and located, it will not be allowed to interfere with other valid
claims, having a location, and not yet confirmed and patented.

Where the title to a particular quantity of land is confirmed to the claimant
by a special act of congress, and before the survey and location, the
government sells a part of the land not necessarily embraced within the
tract confirmed, the title of the purchaser will prevail.

The court and jury will look beyond the confirmation of a claim by the
land commissioners, or by congress, emanating from the former govern-
ments of Louisiana, in order to ascertain the extent and boundaries of
the land claimed.

This is a petitory action, in which the plaintiff alleges he
is the legal owner of two thousand acres of land, situated and
lying on the Bayou Grosse Tête, in the parish of Iberville,
which has been specially located and surveyed by the sur-
veying department of the United States, and confirmed by
the government, as a settlement right to John Franchebois
and to Louis A. Reboul, who took possession thereof in 1798,
and has been continued in possession by them, and those
under whom the plaintiff claims, ever since.

The petition further states, that in 1830, Joseph and Don
Louis R. Orillion took possession of ten acres front of this
tract of land, on the south side of the Bayou Grosse Tête,
and have so run their side lines as to include five hundred
acres of the plaintiff's land, being the upper part of his tract
on the south side of the bayou. He prays that he have
judgment decreeing him all the land embraced within the
limits of the surveys and confirmations to said Franchebois
and Reboul, and for damages, rents, and profits.

The defendants pleaded a general denial; and denied, specially, that the plaintiff's title had ever been confirmed, as alleged. They further show patents to three lots of ground, numbered 26, 27 and 28, signed by the President of the United States, in 1826, which, it is averred, embrace the land in controversy; and also, land on the west side of the Bayou Grosse Tête. They pray to be quieted in the peaceable possession of all the land embraced by their patents, and that the plaintiff's suit be dismissed.

Upon these pleadings and issues, a mass of testimony was introduced.

The principal points of controversy involved in the appeal, arise out of the following charge of the district judge to the jury:

1. "If the plaintiff has shown a confirmation by congress, and that the land confirmed is the same land now claimed by him, with a regular chain of title and transfers from the persons in whose names the claims were confirmed; and that the same was afterwards located and approved by the government, then he has shown a complete title from the United States.

2. "If the defendants' title, which is derived from the same source as that of plaintiff's, was acquired after the confirmation of his title, then the defendants have no title, because the government had already parted with its title, and therefore had none to sell.

3. The jury has nothing to do with the proceedings or evidence on which the commissioners, or congress, acted, in granting the confirmation of plaintiff's title; the certificate of confirmation is sufficient evidence of what it states, and the jury cannot go behind those confirmations.

4. Finally; to state the question simply, the court charges the jury, that, when the same land is in contest, that a confirmation in 1820, is a better title than a patent granted in 1826, or an auction sale by the United States, after the confirmation."

This charge was excepted to by the defendant's counsel.

There was a verdict and judgment for the plaintiff, giving him the land he claimed; from which the defendants appealed.

*Winchester* and *Ives*, for the plaintiff, argued in support of the charge of the judge, and contended, that the plaintiff had shown a complete title, out of the government, and of prior date to that of the defendants.

*Labauve* and *Stacy*, for the defendants, contended, that the plaintiff had not shown, by legal evidence, that the claim of Franchebois and Reboul, under whom he claims, was ever confirmed or acknowledged by the general government, to the extent certified by the register of the land office. But even supposing it had been confirmed, it never was located until 1830; and until such location, the general government was not divested of any specific quantity of land, and might well regard the confirmation as a floating claim.

2. The general government granted a complete title, after a public sale, to the lots numbers 26, 27 and 28, to the grantees, Wilson and Sickles, in 1826, under whom the defendants claim. This is the only complete and legal title to the land in controversy.

3. The charge of the judge is erroneous, and was calculated to mislead the jury. The defendants having shown an absolute title to the disputed premises, the judgment and verdict should be reversed and set aside, and one rendered for the defendants.

*Bullard, J.*, delivered the opinion of the court.

In this case, our attention has been drawn to the charge of the judge to the jury, which was excepted to by the counsel for the appellants.

The jury were instructed, that if the defendants' title, which is derived from the same source as that of plaintiff's, was acquired after the confirmation of plaintiff's claim, then he has no title, because the government had already parted with its title, and therefore had none to sell; that the jury

SLACK
vs.
ORILLION.

The confirmation by a special act of congress, of a particular tract of land, surveyed, and its boundaries defined, is equivalent to a patent; but when the boundaries of the confirmed claim are vague and uncertain, and not surveyed and located, it will not be allowed to interfere with other valid claims, having a location, and not yet confirmed or patented.

Where the title to a particular quantity of land is confirmed to the claimant by a special act of congress, and before the survey and location, the government sells a part of the land, not necessarily embraced within the tract confirmed, the title of the purchaser will prevail.

The court and jury will look beyond the confirmation of a claim by the land commissioners, or by congress, emanating from the former governments of Louisiana, in order to ascertain the extent and boundaries of the land claimed.

had nothing to do with the proceedings or evidence on which the commissioners or congress acted, in granting the confirmation of plaintiff's title, and the certificate of confirmation is sufficient evidence of what it states, and the jury cannot go behind these confirmations; and finally, to simplify the question, they were told, that when the same land is in contest, a confirmation in 1820, is a better title than a patent granted in 1826, or an auction sale by the United States, after the confirmation.

This charge, we think, was well calculated to mislead the jury, as to the merits of this controversy.

It is true, that when the confirmation by act of congress is specific as to the boundaries and location of the land, the title to which is confirmed by it, and a new title is conferred, we have ruled recently in the case of Boatner vs. Walker, just decided, that it is equivalent to a patent. But when the boundaries of the confirmed claim are vague and uncertain, and are to be fixed by the operations of the surveying department, or is only the recognition of a pre-existing right or claim, and before such survey and location the government sells a part of the land not necessarily embraced within the tract confirmed, we held, in the case of Lefebvre vs. Comeau et al., in the western district, ante 221, that the title of the purchaser would prevail.

The defendants hold under three patents from the government of the United States, dated in 1826, for lots of land numbered 26, 27 and 28, on the west side of the Bayou Grosse Tête, "according to the official plat of the survey of said lands, returned to the general land office by the surveyor general:" no copy of that plat is in the record. But the evidence before us is far from satisfying us that the same land had been previously granted by the government to the plaintiff.

We are of opinion, that the court also erred in charging the jury that they could not look beyond the confirmation of the plaintiff's claim. When the claim confirmed by the commissioners or by act of congress, emanated from the preceding governments of Louisiana, the primitive title is

merely recognized, and recurrence must necessarily be had to it, in order to ascertain the extent and boundaries of the land. The confirmation, in such a case, operates only as a relinquishment of title on the part of the government.

According to these principles, and under the peculiar circumstances of this case, if it be admitted that lots numbers 26, 27 and 28, which had been sold in 1826, according to an official plat, were, in 1830, covered by the survey of the land claimed by the plaintiffs, we should conclude that the title of the defendants is best, because, at that time, the land claimed by them under the patents, had ceased to belong to the United States, and could not be taken by the surveying department, in order to make up to the plaintiff his quantity: but this is left vague and uncertain. We have not before us the plat of survey upon which the patents issued, nor can we ascertain what changes have since been made, so as to make room for the plaintiff. If such a change has been made, it is not, in our opinion, conclusive upon the defendants.

But the evidence of confirmation of the claims of Franchebois and Reboul, is quite unsatisfactory. It appears that their pretensions were once rejected by the commissioners. The parties then claimed, the one two thousand and the other one thousand superficial *arpents* and not *acres*. They were rejected because they had only a *requête* without any evidence of habitation or cultivation, and that their claim was unwarranted by any law, usage or custom of the Spanish government.

When the claims were afterwards presented to the register and receiver, acting as a board of commissioners, they are stated to be for *acres* instead of arpents, and to be founded on orders of survey issued by the proper Spanish authorities; and those officers declare it to be their opinion, that all the claims included under the second species of the first class, are already confirmed by the act of congress of the 12th of April, 1814, without stating that those claims had ever been so claimed.

This certificate of an opinion upon the construction of the act of congress, is followed by a further certificate of the

present register of the land office, who furnishes a copy of it, that it is taken from the reports on land claims in his office, and which reports were confirmed by act of congress of the 11th May, 1820.

The first certificate does not show that the claims of Reboul and Franchebois, were embraced under the second species of the first class ; and the only report which is shown to have been made upon them, before the act of congress of 1814, is that in which they are declared to be unfounded, and are, consequently, rejected. A recurrence to the act of 1814, does not satisfy us that a claim which had been rejected because it was not accompanied by any written evidence of title emanating from the Spanish government, was confirmed by that act. See *Land Laws, page* 651.

The certificate of the present register that the *reports* of the former board, when it appears that they only reported an opinion that a certain class of claims had already been confirmed without recommending their confirmation, have been confirmed by the act of 1820, is at best but his construction of that act of congress.

The first section of the act referred to by the register, enacts, that the claims for land within the eastern district of the state of Louisiana, described by the register and receiver in their reports of the 20th November, 1816, *and recommended* with said report for confirmation, be and the same are hereby confirmed against any claim on the part of the United States. *Land Laws,* 778.

The plaintiff purchased only arpents, and he cannot recover in any event, more than he purchased ; and we are of opinion that the defendant has a right to give the best evidence in his power, of the true extent of the original title under which the plaintiff holds, and we cannot presume the government has confirmed a greater extent than his primitive title imported.

We are, however, not prepared to say that the court erred in rejecting, as evidence, copies of the *requêtes*, certified by the registers of the land office, to be true copies from his register. But we cannot concur in one of the reasons given

for it, to wit: that as the plaintiff only claimed under the United States, they were not bound to go beyond the confirmation. We have already expressed our views on that point. The offer to produce such copy should have been preceded by such steps as are required by the Code of Practice, or an opportunity, on the part of the plaintiff, allowed to produce the originals.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed, and the verdict set aside ; and it is further ordered that the case be remanded for a new trial, with directions to the judge to abstain from charging the jury upon the points objected to in his former charge, except in conformity with the opinions herein expressed, and that the appellee pay the costs of this appeal.