JOSEPH ORILLION and another *v.* ELIPHALET SLACK.

Where the proprietor of two estates has alienated one of them, in any contest as to the property, the limits assigned by the vendor at the time of the sale, and not the ancient boundaries, must be consulted. C. C. 840.

APPEAL from the District Court of Iberville, *Deblieux*, J.

Two suits, commenced by the plaintiffs against Slack, were consolidated in the lower court, and judgment rendered therein "in favor of the plaintiffs, for $1473 damages, as the difference between the value of the land composing the back tract, or second concession of lots Nos. 26, 27 and 28, and the price paid therefor to the United States by the defendant," and for the possession " of the one half *arpent* front, with a depth of forty, in possession of the defendant, and shown to be a part of lot No. 26." The reconventional demand of the defendant was dismissed, on the ground that the question involved in it was *res judicata*. The defendant appealed.

BULLARD, J. The plaintiffs represent in their first petition (No. 1757,) that they are the owners of a plantation on the bayou Grosse Tête, composed of numbers 26, 27, and 28, about fifteen *arpens* front, and containing 491¼ acres, which lots were duly sold in 1826, and patented by the United States to Wilson and Sykes, from whom they derive title. That about the year 1830, the Surveyor General located a pretended claim of Reboul and Franchebois for fifty *acres* front on the bayou instead of *arpens*, and that, in that survey, the former official one under which the patents had been issued, was overlooked or disregarded, and the courses and distances changed. That, by said erroneous location, the said three lots were covered, so that there remained but a small strip of No. 28, and that the said location covered the whole double concession to which the said lots were entitled. That subsequently to said location the act of congress was passed, authorizing the front proprietors to purchase their back lands, and that in virtue thereof, the petitioners were entitled to purchase 491¼ acres, in the rear of their front tract; but that they were prevented by the erroneous and improper location of the claim of Reboul and Franchebois. It is represented that Eliphalet Slack, being, at the time, the pretended owner of the claim, purchased the back lands. It is further represented that the double concession was covered by the erroneous location of the claim, so that the petitioners could not enter the back lands to which they are entitled. They aver that, under the circumstances, the purchase so made by Slack enures to their benefit, and ought to be decreed to be for their use. It is averred that Slack well knew that he

had no just right to the back concession.  They further allege, that while the said law was in force, they attempted to enter the back lands to which they were entitled, and applied to the proper land office for that purpose, but were refused.  It is further alleged that Slack soon afterwards sold the land thus acquired as a double concession, so that the plaintiffs cannot claim the land itself; and that their only relief is in damages, which they pray for.   They further allege acts of trespass committed on other parts of their land, for which they also claim damages.    In suit No. 1893 the plaintiffs claim title to half an *arpent* in possession of Slack.

The defendant Slack, denies generally the allegations in the petition, and avers that he is the owner of a tract of land of forty acres front on the bayou Grosse Tête, by the depth of forty, bounded above by the land claimed by the plaintiffs; it being the tracts confirmed to Reboul and Franchebois, for twenty-five acres front each.   That the tract was afterwards, by competent authority, located, and the location approved.   He describes the location and the calls of the original titles.   He avers, that in 1836, he entered and purchased 1680 acres, being the quantity he was entitled to purchase as a double concession, which he afterwards sold to A. Hodge.   He denies any knowledge of the pretended claim of the plaintiffs to the double concession, either at the time he made the purchase, or at any time previously to the bringing of this suit.   He denies the right of the plaintiffs to any back lands, and that the location of the claims of Reboul and Franchebois, which he purchased in good faith, is erroneous.   He denies that his land conflicts with any belonging to the plaintiffs on the Grosse Tête.   He concludes by praying that the claim for damages may be rejected; that the line of division between the tracts may be settled and established; and that he may be quieted in his title.

The plaintiffs put in an answer to this, regarding it in the light of a reconvention, and averred that the demand of the defendant has already been passed upon, and adjudicated, by the District and Supreme Courts in the case of *Slack* v. *Orillion*, No. 1574; and they pleaded that judgment as *res judicata*.

The case of *Slack* v. *Orillion* was twice before this court, (See 11 La. 587, and 13 Ib. 56;) and the first question which

this case presents is, whether the judgment finally pronounced in that case by the District Court, and which was affirmed on appeal, be conclusive as to the title, and forms a *res judicata*.

It is clear that the parties are the same, although their position in relation to each other is changed. The thing in dispute is the same : the plaintiff in that case asserting title under the confirmation in favor of Reboul and Franchebois, and the defendants under the patents for lots No. 26, 27, and 28. But it is argued that the court did not pronounce any final judgment in the case ; that both parties were nonsuited, the plaintiff in relation to the principal demand, and the defendant as to his claim under the patents in reconvention.

In order to determine this point, it is necessary to examine the judgment pronounced in the District Court, and which was affirmed here, premising that the *locus in quo* does not appear to have been questioned. The issue was, which party had the best title to the three lots covered by the patents. The District Court, after saying that the plaintiff, not having shown title to the land claimed by him in the defendant's possession, must fail, renders the formal judgment in these words : " It is therefore ordered, adjudged and decreed that there be judgment *against* the *plaintiff* in regard to the claim set up in his petition against the defendants ; and that there be judgment *as of nonsuit* against the defendants in regard to their plea in reconvention in their answer contained." If the judge had stopped at the end of the first clause of the sentence, it would have been, most clearly, a judgment for the defendants, and would have formed a bar to any future action by the plaintiff, founded on the same title. The subsequent part of the judgment, in which the court pronounces upon the reconventional demand, and leaves the question open as to the right of the defendants to recover, under the patents, any part of the land in possession of the plaintiff, does not appear to us to make the first clause any thing less than a final judgment upon the title set up by the plaintiff. The question, however, as to any conflict between the two titles, and, in the event of such conflict, which ought to prevail, under the above restriction, appears to us to have been left open. The court was not satisfied, that the plaintiff in that case was in possession of land covered by the de-

fendant's patents, because the original survey referred to in the patents was not shown. It was for this reason, that the court declined pronouncing finally, upon the right of the patentee to recover any land occupied by the plaintiffs, under the location of the claim of Reboul and Franchebois, although it said that the plaintiff could not recover.

The evidence in this case shows that Slack is in possession of half an *arpent* front, by the depth of forty, of lot No. 26, belonging to Orillion, and embraced in the patent.

Slack has himself asked that the boundary between the parties may be finally established.

It is contended that Slack's possession cannot be disturbed; and the argument is, that both parties claim to hold under Joseph Erwin, to whom all the land, whether covered by the Reboul location, or the patents, at one time belonged; that when all belonged to him, there was a kind of confusion or merger of title, and that the sales were afterwards made without reference to the boundaries as shown by the patents; that Orillion bought a tract bounded by Slack's plantation; and that Orillion must look to his deed, and not to the patents, for the boundary between him and Slack, both holding under Erwin.

Such is undoubtedly the doctrine of the Civil Code; and the only question is, whether it be applicable in this case. Article 840 declares, in express terms, that " when an owner has alienated one of two estates which belonged to him, and the property of any part of it is contested, the limits assigned to it by the vendor at the time of the sale must be consulted. The limits anciently subsisting between the two estates must not be regarded, because the designation which the vendor makes of the metes and bounds, forms new *limits* between the two estates, or between the parts of them which he has sold." *Bourguignon* v. *Boudousquie*, 6 Mart. N. S. 700.

According to the written admissions of the parties, it appears that Orillion purchased lots 26, 27, and 28, of Joseph Erwin, who had acquired them from the patentees; that Slack is the owner of the claim of Reboul and Franchebois, and that the Reboul claim which is the uppermost one, and conflicts with the patents, belonged also to Erwin by a regular chain of conveyances; that on

the 15th of April, 1826, Erwin sold to Sneed ; and that the whole claim now belongs to Slack, who purchased from Sneed.

It becomes important, therefore, to examine the deed by which Orillion became the owner of the three lots. The first sale is from Erwin to Don Louis Rosemond Orillion, of one undivided half of certain land composed of four lots, laid out and sold by the United States on the Bayou Grosse Tête, designated by numbers 30, 31, 32 and 33, on the south side of the bayou ; and, further, of the right and title of Erwin by purchase from John Wilson in and to all land laid out and sold by the United States, on the south side of the bayou, lying below lot No. 29 and above lot No. 25, be the same more or less ; the said Erwin selling and conveying such part of the lot No. 28, 27 and 26, as may be ultimately decided to belong to the United States, lying between the land originally granted to ————— and lot No. 29. ————— This blank it appears is to be filled up with the claim of Reboul ; it being doubtful at the moment which was the upper claim, that of Reboul or that of Franchebois. It must be remarked that the two claims had not at that time been located, and it was doubtful whether they would not interfere with the purchase made by Wilson and Sykes of the United States.

The sale from Erwin to Sneed is not in the record : but by looking at the deed from Sneed to Slack, we discover that he purchased from Sneed forty *arpens* front, by forty in depth, on both sides of the bayou Grosse Tête, bounded above by lands of Joseph Erwin, and below by lands of the widow and heirs of Stephen Ross.

Thus Slack is bounded above by Erwin, the vendor of Sneed ; and Orillion deriving title from the same source, is bounded below by the claim of Reboul.

Slack purchased one undivided half of the land from the succession of Cutter, and it is described in the *procès verbal* as having forty *arpens* front, by forty in depth, bounded above by Orillion, and below by the United States.

It appears to us therefore, pretty clear that Erwin, the common vendor of the parties, did not intend to sell to Sneed more than forty *arpens* front, bounded below by Ross, and above by his own land acquired from Wilson ; and that he intended to sell to

Orillion so much of Nos. 26, 27, and 28, as did not interfere with his sale to Sneed. The boundary line, therefore, between the parties would be forty *arpens* above the upper line of Ross' land. Such appear to be the true boundaries according to the titles; and it is clear, that Slack could not, by a subsequent location and survey, giving to himself *acres* instead of *arpens*, materially affect the rights of the parties; nor could Orillion, disregarding the boundaries set forth in his deed, insist upon the patent lines as the true division line between him and Slack, claiming from a common vendor. When the case of *Slack* v. *Orillion* was before this court, none of these questions were raised. The rights of the parties were considered as if each had derived title directly from the respective grantees, instead of holding under a common author; and, in that view of the case, it appeared to us that Slack, under the location of the Reboul claim, could not recover any part of lots No. 26, 27, and 28, which were covered by the patents from the United States. The view now taken, and the evidence now exhibited present the case in a very different light; and the question recurs, are the parties precluded by the former judgment? That judgment appears to us conclusive against Slack; and that, under the location of 1830, he cannot claim any land in possession of Orillion under the patents. But the present action may well be regarded as one of boundary subject to that restriction, and if the evidence showed satisfactorily where the forty *arpens* front sold by Erwin to Sneed, would terminate on the bayou, we should think ourselves authorized to declare that to be the true boundary between the two tracts. But nothing shows where the survey of those forty *arpens* is to begin, or, in other words, where the land of Ross ends. Upon the question of boundary we cannot, therefore, act definitively.

Another question besides that of damages, reserved by the agreement of the parties, still remains to be examined, to wit: whether Orillion be entitled to recover damages in lieu of the back concession, which was purchased by Slack under the acts of Congress.

If the plaintiff had applied to the proper office in due time, and exhibited his patents as evidence of his being a front proprietor within the meaning of the act of Congress, and the commissioners

had awarded a preference to Slack under his title, and the plaintiff had offered to refund to Slack what he had paid, it is probable that, on his title being decided to be the best, he might have been decreed to be the true owner of the back tract, on paying the price to Slack. · But it does not appear that any application was made by Orillion to enter the land; and Slack in the mean time with an apparent title to the front tract, purchased of the government the land adjoining in the rear, and sold it in good faith, for aught that appears to the contrary. There is nothing to satisfy us that Orillion ever had any intention to apply for the back lands, except his inquiring of the Surveyor General whether there was any land in the rear subject to entry; and he appears to have been satisfied with the answer that there was not. It cannot, therefore, be said that he was prevented by Slack from prosecuting any right he might have; and we think he is not entitled to the damages awarded him by the court below.

It is therefore ordered and decreed that the judgment of the District Court, be avoided and reversed; and it is further ordered that the case be remanded for further proceedings upon the questions reserved by the parties, and to ascertain and establish the division line between the parties according to the opinion herein expressed; and that the appellee pay the costs of the appeal.

*Labauve*, for the plaintiffs.

*G. B. Taylor*, for the appellant.