## LAFAYETTE et al. *v.* BLANC.

| 3   59|<br>| 47   580|

The presentation of a petition to a spanish intendant of the province of Louisiana praying for the grant of a tract of land, which was referred to the surveyor general to report thereon, but on which no further action had been had at the time of the transfer of the territory to the United States, the petitioner never having had actual possession of the land, can confer no title to it.

Sec. 1 of the act of Congress of 12 April, 1814, only confirmed titles to lands claimed by virtue of incomplete french or spanish grants, concessions, warrants, or orders of survey, granted prior to 20 Dec. 1803, and having a special and definite location. It did not confirm any claim unsupported by written evidence of title emanating from the french or spanish governments.

In order that a confirmation may have the force and effect of a patent, the description in the inchoate title or in the act of Congress must be such as will identify the land. If the description will fit another place as well or better, it is defective, and will not protect the holder, who can show no original possession, against a subsequent location made under the authority of Congress.

APPEAL from the Parish Court of New Orleans, *Maurian*, J. *L. Janin*, for the appellants. *H. A. Bullard* and *Preston*, for the defendant. The judgment of the court was pronounced by

ROST, J.* This action purports to be instituted against the defendant for slandering the plaintiffs' title to waste lands; but, as the fact of possession is left in doubt by the evidence, we will consider it as a petitory action. The plaintiffs assert title to a tract of land situated in the rear of the city of New Orleans, under a patent issued in 1825, on a location made a short time previously, in pursuance of the provisions of several acts of Congress granting lands to General Lafayette, for his services in the revolutionary war. They allege that the defendant claims title to a portion of said land; they pray that he may be ordered to produce his title, if any he have; and finally, that they may be quieted in their title against his pretended claims. The defendant alleges that he is, and has been for more than a year before the commencement of this suit, in quiet possession of a tract of land of six *arpents* front on the canal Carondelet, and running back between parallel lines to the line of the late *John Gravier's* plantation, marked on the public surveys of that part of the city with the name of *Ls. Lioteau;* and he denies that the plaintiffs possess, or ever have possessed, any part of said land. He farther pleads the prescription of twenty and thirty years. There was judgment in favor of the defendant, and the plaintiffs appealed.

The extent of the conflict is shown by the evidence, and the only question for our consideration is, whether the land claimed by the defendant falls within the reservation of the patent, by virtue of which only such parts or parcels of the tract of land which it embraces are granted, as were not at the time it issued legally claimed by any other person or persons whatsoever.

The title on which the defendant relies may be stated as follows: In 1801, *Louis Lioteau* presented a petition to the intendant *Morales*, praying that a tract of land be granted to him, having six *arpents* front on the left bank of canal Carondelet, with the ordinary depth, if there should be such a depth

---

* EUSTIS, C. J., having been of counsel, did not sit in this case.

LAFAYETTE
*v.*
BLANC.

vacant, being bounded on one side by the land of *Carlos Guasdiola*, and on all the other sides by public land. He states as a reason which entitles him to the favorable notice of the intendant that, his object was to establish a large garden and to drain the land, which would be advantageous to the public and contribute to the salubrity of the city. He stipulated to conform to the regulations relating to grants of land. On this petition an order was made in 1802, which is attested by the notary, *Carlos Ximenes*, and is in these words: "Vistos pasese este expediente al agrimensor gnl. *Dn. Carlos Trudeau*, para que en vista de el informe lo conbeniente." No report is either alleged or shown to have been made on this petition by the surveyor-general, *Trudeau*. No farther action was had upon it. It appears to have remained in the land office, and was found there by *Lioteau* in 1813, in a bundle of papers bearing the superscription, "Instancias pendientes." Soon after, *Lioteau* filed a claim in the land office, stating in his application. that "this land is claimed by virtue of proceedings had before the spanish intendency in 1801 and 1802, of which proceedings the accompanying document is a true copy, as taken from the original in the registry office for the eastern district of Louisiana." On this claim a report was made by the register and receiver, stating that the land was claimed by virtue of an order of survey dated in the year 1802. It was embraced in the second species of the first class of claims, on which the board reported as follows: "We are of opinion that all the claims included under the second species of the first class are already confirmed, by the act of Congress of the 12th April, 1814." The report bore date the 20th November, 1816, and was acted upon by the act of Congress of May 11th, 1820, which provided that "all the claims embraced in this report, and *recommended for confirmation*, are confirmed." It is not denied that the defendant is subrogated to the rights of *Lioteau*, and our only enquiry is in relation to the nature of those rights.

In the case of *Hooter* v. *Tippet*, 8 Mart. 637, in which the plaintiff set up a claim similar to that of the defendant in this suit, the late Supreme Court said: "There is no order of survey; no decree of any kind is given by the intendant or his representative; the application stands unanswered. Now, supposing the parties to be in the situation in which they were before the relinquishment of the rights of the United States, would the plaintiff be able to eject the possessor of the land with such a paper—a paper which is the act of the party alone, and bears not the slightest intimation of the grantor's pleasure." The claim was held by the court to be destitute of merit, law, or equity.

In a subsequent case, between the same parties, the court went farther, and held that a permission to settle, obtained on a *requéte*, but not followed by actual settlement, did not give a right superior to that resulting from an actual settlement without permission, or in other words from naked possession. 5 Mart. N. S. 110.

These decisions are clearly correct, and under them we are bound to say that *Lioteau*, never having had the actual possession of the land in controversy, had no lawful or equitable claim to it, at the change of government. The defendant farther claims title under the first section of the act of Congress, of the 12th of April, 1814, by which he alleges his claim to have been confirmed. That section only confirmed the title to lands claimed by virtue of incomplete french or spanish grants, concessions, warrants, or orders of survey, granted prior to the 20th of Dec. 1803, and having a special and definite location. *Lioteau* held none of those inchoate titles, nor was the location of his claim defi-

nite and certain as this law seemed to require. The opinion expressed in the report that the claim was confirmed by that act, cannot supply those deficiencies. The facts of this part of the case do not materially differ from those of *Orillon* v. *Slack*, 11 La. 591, in which the court held that the first section of the act of 1814 did not confirm claims unsupported by any written evidence of title emanating from the spanish government. The defendant's claim was not recommended for confirmation in the report, and of course was not confirmed by the act of 1820.

Had the defendant obtained a confirmation, it is probable it would not avail him in this controversy. His *requête* calls for one of the side lines of *Guasdiola*, but does not state which of the side lines. This location, unsupported by any survey or by actual possession before the change of government, would be too indefinite and uncertain to prejudice the plaintiffs. We take the rule to be that, in order that the confirmation may have the force and effect of a patent, the description in the inchoate title, or in the act of Congress, must be such as will identify the land. If it will fit another place better or equally well it is defective, and will not protect the holder, who can show no original possession, against a subsequent location made under the authority of Congress.

An attempt has been made to fix the location by means of a map of the city of New Orleans and of the plantations around it, purporting to have been made in 1802 by *Trudeau*, in obedience to an order of the intendant *Morales*, and of record in the land office. Had an order of survey been given on the *requête*, we might perhaps at this distance of time presume, in the absence of the plat of survey and of the return of the surveyor, that the land was correctly represented on this map; but *Lioteau*, when applying for the confirmation of his claim, never pretended that an order of survey had been obtained nor a survey made, and rested his application exclusively upon his *requête* and the statement of *Ximenes* thereon. Under this state of facts the map adduced does not make proof of the location, and there is other evidence in the record which raises a strong presumption of its want of accuracy. The defendant's claim is designated on the map as "*terreno solicitado pr. Dn. Luis Lioteau.*" Adjoining it is another claim designated as "terreno solicitado pr. *Dn. Guilberto Guillemard*," which is also embraced within the lines of the patent of the plaintiffs and which nobody claims. The register of the land office who, in 1816, gave it as his opinion that the defendant's claim had been confirmed by the act of 1814, had this map in his keeping, and must have been aware of the location it gave to that claim. The report of the same officer, made to the general land office in 1825, with a view to the location of General *Lafayette's* patent, that this land was at that time vacant, shows that he disregarded the map, and that he must have considered the proper location of *Lioteau's* claim to be on the other side line of *Guasdiola's* land, that location answering the description in the *requête* equally well.

Had the United States parted with their title in favor of the defendant, this case would not be easily distinguished from that of *Lefebvre* v. *Comau et al.* 11 La. 321. In that case it was not shown that the settlement made by the defendant was upon either of the quarter sections which the plaintiff had acquired from the United States, and on that ground he was cast. In this case, no settlement whatever is shown to have been made by the defendant anterior to the date of the patent, and the calls of the *requête* are indefinite.

The defendant has failed to show either a title, or a possession upon which prescription can be based; and we are clearly of opinion that the land in controversy was not lawfully claimed by him when the patent issued to General *Lafayette.*

LAFAYETTE
v.
BLANC.

It is therefore ordered that the judgment in this case be reversed. It is further ordered that there be judgment in favor of the plaintiffs, and that they be forever quieted in their title and possession against all claims and pretensions of the defendant to the tract of land described in the petition, to wit, a triangular piece of ground, lying in the rear of the city of New Orleans, bounded by Prieur street, Common street, and in the rear or west by a line running from a point on Orleans street, between Roman and Derbigny streets, to the corner of Miro and Common streets, and designated as squares nos. thirty-three, thirty-four, thirty-five, thirty-six, thirty-seven, thirty-eight, thirty-nine, forty, forty-one and forty-two, on a plan made by *Louis Pilié*, and deposited in the office of *D. L. McCay*, notary public, representing lands granted by the United States to Major General *Lafayette*, by letters patent dated the 4th of July, 1825. It is further ordered that the defendant pay the costs in both courts.